IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:12-CV-176 (MTT) |
| | ) |
| FEDERAL DEPOSIT INSURANCE | ) |
| CORPORATION, as receiver for | ) |
| McIntosh State Bank, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

Before the Court is the Defendant's second Motion to Dismiss. (Doc. 7). For the following reasons, the Motion is **GRANTED in part**. Ruling on the remainder of the motion is **POSTPONED**, and the parties are **ORDERED** to file additional briefs as outlined below.

### I.   BACKGROUND

The Plaintiff filed this lawsuit against McIntosh State Bank June 17, 2011, in the Superior Court of Butts County, Georgia, the same day the FDIC was appointed receiver. (Docs. 1-1; 1-2 at 4). He claims his bookkeeper forged his name on the endorsement line of 17 checks made payable to him and then cashed the checks at McIntosh State Bank, where he is an account holder. The fraudulently endorsed checks were drawn on an Ace Hardware commercial account at another bank. McIntosh paid the bookkeeper when she presented the checks even though she was not authorized to endorse or negotiate checks on the Plaintiff's behalf. This payment on the presented checks, the Plaintiff contends, constitutes conversion pursuant to O.C.G.A. § 11-3-420.

The Plaintiff also asserts that the bank's actions give rise to common law negligence and breach of contract claims.

The FDIC was substituted as the Defendant in place of the bank on May 8, 2012. The FDIC then removed the action to this Court on May 15, 2012. (Doc. 1). Shortly thereafter, it filed its first Motion to Dismiss. (Doc. 3). The Plaintiff amended his Complaint to plead additional facts. (Doc. 5). The Defendant then withdrew its first Motion to Dismiss on June 25, 2012, and filed a new Motion to Dismiss addressing the Plaintiff's additional allegations. (Doc. 7). This Court then ordered the parties to brief the issue of whether the case was properly removed in light of the state-law exception to federal jurisdiction over claims against the FDIC. *See* 12 U.S.C. § 1819(b)(2)(D). (Doc. 9).

The parties complied with the Order, but the Court still did not feel sufficiently informed to decide the jurisdictional question. In the hope of facilitating an answer, the Court postponed ruling on the Defendant's second Motion to Dismiss and ordered the Plaintiff to recast his Complaint. The Court also ordered the Defendant to file an Answer to the Plaintiff's second Amended Complaint and to raise any federal defenses it intended to assert. (Doc. 12). The Court then provided the Plaintiff additional time to move to remand this case to Butts County and, given the Court's sua sponte powers, presented the Defendant an opportunity to argue the colorability of any federal defenses asserted in its Answer. The Plaintiff filed his second Amended Complaint (Doc. 13) and the Defendant answered (Doc. 14). Neither party addressed subject matter jurisdiction.

## II.  DISCUSSION

### A.  Federal Jurisdiction

The threshold question the Court must address is whether it has jurisdiction to hear this case.  Generally, civil suits in which the FDIC is a party are deemed to arise under the laws of the United States.  12 U.S.C. § 1819(b)(2)(A).  Thus, the FDIC may in most cases remove to federal court any suit filed against it in state court within 90 days of the FDIC's substitution as a party.  12 U.S.C. § 1819(b)(2)(B).  However, there is a narrow exception to this rule:  The action does not arise under federal law when (i) the FDIC is acting as a receiver of a state chartered bank and is not the plaintiff in the action; (ii) the action involves only the preclosing rights against the state bank or obligations owing to its depositors, creditors, or stockholders; and (iii) only the interpretation of state law is necessary.  12 U.S.C. § 1819(b)(2)(D)(i-iii).  If the three elements of this exception are met, then no federal question exists, and the federal district court cannot exercise jurisdiction over the lawsuit.

In this case, subparts (i) and (ii) of the state law exception are not in dispute.  What must be decided is the applicability of subpart (iii) – whether only the interpretation of state law is necessary to resolve this lawsuit.  In most civil actions this would be determined by examining the Complaint:  The "well pleaded complaint" rule demands that the basis for federal jurisdiction appear on the face of the plaintiff's complaint.  *Lazuka v. Federal Deposit Ins. Corp.*, 931 F.2d 1530, 1534 (11th Cir. 1991) (superseded by statute on other grounds) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9-10, 103 S. Ct. 2841, 2846-47 (1983)).  Assertion

of a federal question as a defense would be insufficient.  *Id.*  (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43 (1908)).  Yet in some circumstances, Congress may by statute overcome the general rule that a federal question is raised only if it appears in the complaint.  This is the case with 12 U.S.C. § 1819, which allows the FDIC to remain in federal court if it raises one or more federal questions as an element of its defense to the state law claims.  *Id.* at 1535.  The practical effect of this is that the FDIC may remove to federal court nearly every case in which it is a party.  *Id.*

Yet despite this broad removal authority, it is not enough for the FDIC to simply state a federal defense in its Answer.  The defense must also be "colorable" and not frivolous or meritless.  *Diaz v. McAllen State Bank*, 975 F.2d 1145, 1149 (5th Cir. 1992); *Reding v. Federal Deposit Ins. Corp.*, 942 F.2d 1254, 1258 (8th Cir. 1991); *Capizzi v. Federal Deposit Ins. Corp.*, 937 F.2d 8, 10 (1st Cir. 1991).  This requires district courts to determine what the FDIC's defenses are and to gauge their likely significance.  *Capizzi*, 937 F.2d at 11.  The trick for courts is to decide whether the federal defense presents a colorable issue for decision without expressing opinion on the merits of the case.  *Diaz*, 975 F.2d at 1150.  That is because the FDIC cannot bypass the state law exception in subpart (iii) by merely *asserting* a defense based on federal law.  The FDIC's defense must genuinely raise a disputable issue under federal law.  *Reding*, 942 F.2d at 1258.  Otherwise, the rule would eviscerate the exception.  Here, the Defendant has asserted four federal defenses.  This Court must determine their colorability.

The Defendant first states that the Plaintiff's Complaint is barred in whole or in part because the agreement the Plaintiff alludes to in his breach of contract claim must

comply with 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A).  The statutes provide that there can be no valid claim against assets held by the FDIC as receiver if the claim is based on an agreement (1) not executed in writing at the time the depository institution acquired the asset, (2) not approved by the institution's board of directors or loan committee, and (3) not kept continuously as an official record.  These statutes codify the *D'Oench, Duhme*[1] doctrine, the general effect of which is this:

> In a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records.

*Murphy v. F.D.I.C.*, 208 F.3d 959, 963 (11th Cir. 2000).  In this case, the Plaintiff has asserted a breach of contract claim, alleging that "under the terms of Plaintiff's agreement with McIntosh, McIntosh agreed to accept and pay only those checks bearing the signatures of authorized persons."  (Doc. 13, ¶ 14).  It is not clear what particular agreement this refers to, or whether it was written or oral.  And there certainly is not enough information to determine whether the agreement satisfies each of the statutory requirements of 12 U.S.C. § 1823(e) and § 1821(d)(9)(A).  But without more information, the alleged existence of some agreement at the very least allows the Defendant to legitimately raise these statutes as a colorable defense to the Plaintiff's breach of contract claim.  Whether the Defendant could ultimately prevail on the merits

---

[1] *See D'Oench, Duhme & Co. v. Federal Deposit Ins. Corporation*, 315 U.S. 447, 62 S. Ct. 676 (1942).

of this defense need not be decided at this stage. For jurisdictional purposes, however, the Defendant has asserted a colorable federal defense here.

The Defendant next argues that the Plaintiff's Complaint is barred in whole or in part because the Defendant is not subject to penalties pursuant to 12 U.S.C. § 1825(b)(3). The statute states that when acting as a receiver, the FDIC "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." There is some question whether this statute applies outside the context of state or local government efforts to tax or fine the FDIC. *See, e.g., Hennessy v. F.D.I.C.*, 58 F.3d 908, 924 n.11 (3d Cir. 1995) (rejecting the argument that § 1825(b)(3) exempts the FDIC from ERISA penalties because when "[r]ead as a whole …§ 1825 appears to concern exemptions from *taxes*"). However, for the purposes of this jurisdictional question, the Court will assume the statute may be applied to deflect any penalties asserted against the FDIC as receiver. Other courts have done so as well, and have found § 1825(b)(3) a colorable defense when raised in response to a plaintiff seeking punitive damages. *See Holmes v. F.D.I.C.*, 2011 WL 1750227 at *4 (E.D. Wis.) (noting that courts "have interpreted this provision as codifying the federal common law rule that punitive damages against instrumentalities of the United States must be expressly authorized by Congress").

In this case, however, the Plaintiff has not sought punitive relief. The Plaintiff asks that "he be awarded damages from McIntosh Bank in an amount to be shown at trial; in accordance with the enlightened conscience of an impartial jury" and that "he be awarded interest and costs." (Doc. 1-2, ¶ 24). An award of punitive damages, which

are derivative of any substantive tort claims and require proof of willful misconduct, malice, fraud, wantonness, oppression, or the entire want of care, "must be specifically prayed for in a complaint." O.C.G.A. §§ 51-12-5.1(b), (d)(1). The Plaintiff has not pled facts that could be construed to meet these requirements nor has he made a specific request for punitive damages, despite the fact that he has filed three different versions of his Complaint. Therefore, § 1825(b)(3) is not a colorable defense.

Next, the Defendant contends that 12 U.S.C. § 1821(j) bars the Plaintiff from seeking equitable relief, based on the statute's admonition that "no court may take any action … to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." "This provision has been interpreted to restrict injunctions, and other equitable relief, against the [FDIC] when the [FDIC] acts as a receiver or conservator, even if the [FDIC] violates its own procedures or behaves unlawfully." *Bursik v. One Fourth Street North, Ltd.*, 84 F.3d 1395, 1397 (11th Cir. 1996).

However, equitable relief is available only when there is no adequate remedy at law. Further, actions seeking the recovery of money do not fall within the jurisdiction of equity. *Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994). *See also Mayor Wadley v. Hall*, 261 Ga. 681, 682 (1991) ("Equity will not take cognizance of a plain legal right where an absolute and complete remedy is provided by law"). Here, the Plaintiff has sought only monetary damages. Equitable relief is not available, nor has it been requested. It is puzzling that the Defendant would raise statutory provisions precluding the Plaintiff from obtaining relief he has not requested and cannot ask for. The Court is hard-pressed to identify any reason the Defendant has for making these assertions other than its desire to create jurisdiction

where jurisdiction ought not exist.  Certainly there is no color to an argument for the application of either 12 U.S.C. § 1825(b)(3) or 12 U.S.C. § 1821(j).[2]  As such, neither statute can serve as a predicate for federal jurisdiction in this case.

Finally, the Defendant asserts the Plaintiff's Complaint is barred because he is restricted to remedies provided by the Federal Deposit Insurance Act, including the Act's priority payment scheme and payment process.  The Court's initial reaction to this contention is that, by its breadth, this is no defense at all.  That the Defendant would cite specific codified sections of the Act discussed above, but subsequently invoke the Act in such general terms, suggests the Defendant could not identify any additional possible defenses and hoped instead to profit from the ambiguity of a catch-all reference.  As stated, the purported defense is hardly sufficient to notify the Plaintiff or the Court what exactly the Defendant intends to rely on.  However, based on the Defendant's allusion to a "priority payment scheme and payment process" and arguments it made prior to filing its Answer, the Court will, for the sake of argument, construe this as an effort to raise a defense grounded in 12 U.S.C. § 1821(d)(10)(A) and § 1821(d)(11).

Section 1821(d) outlines the FDIC's powers and duties as a receiver for a failed bank.  *Coast-To-Coast Financial Corp. v. U.S.*, 51 Fed. Cl. 358, 360 (Fed. Cl. 2002).  This includes the authority to determine claims made on the assets received.  *Id.*; § 1821(d)(3).  Sections 1821(d)(3)-(d)(10) establish "a scheme for the determination, review, and payment of claims."  *Id.*  More specifically, § 1821 (d)(10)(A) permits the FDIC as receiver to pay creditor claims "determined by the final judgment of any court…in such manner and amounts as are authorized under this chapter."  Based on

---

[2] In fact, the frivolity of these defenses shades more toward a Rule 11 violation.

this authority, the FDIC pays such claims by issuing "receiver's certificates," which are not negotiable and are not cash, but which provide evidence of a claim and a right to payment *pro rata* to other claimants in the order of priority set by § 1821(d)(11). *See Battista v. F.D.I.C.*, 195 F.3d 1113, 1116 (9th Cir. 1999).

The Court presumes, based on the Defendant's prior arguments, that the Defendant believes the Plaintiff would want to be paid in cash if he prevailed and that § 1821(d) would prohibit this. The Defendant's belief may or may not be valid. At this early stage the Plaintiff has not placed this issue in dispute, and the Court will not speculate as to his post-judgment payment preferences. Even so, the payment procedures these statutes construct do not operate as an affirmative defense. "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999)). Here, even if the Defendant succeeds in applying §§ 1821(d)(10)(A) and 1821(d)(11) to a judgment resulting from this action, these statutes do not *defeat* the Plaintiff's claims. Indeed, the payment scheme is irrelevant as to whether the Defendant is liable to the Plaintiff for damages. The statutes address the question of how the Plaintiff's judgment would be satisfied if he were to ultimately prevail. *See Federal Deposit Ins. Corp. v. Lake Elsinore 521 LLC*, 2011 WL 1542067 *1-3 (D. Nev.) (construing § 1821(d)(10)(A) while determining whether FDIC had satisfied judgment against it); *Battista*, 195 F.3d at 1115 (discussing § 1821(d)(10)(A) in a judgment dispute *after* the FDIC's liability had been established). Because the payment and priority scheme does not touch the merits of

the Plaintiff's claims, the Defendant cannot assert these statutes as a colorable defense to its potential liability.

In sum, the Defendant's only colorable federal defense to the Plaintiff's claims is the first one it raises: the *D'Oench, Duhme* doctrine as codified in 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A). The remaining defenses the Defendant asserts have no colorable application to the claims at hand and as defenses do not raise any genuinely disputable issues under federal law. Thus, the Court's sole basis for subject matter jurisdiction, as it turns to the Defendant's second Motion to Dismiss, is the *D'Oench, Duhme* defense raised in response to the Plaintiff's breach of contract claim.

### B. Motion to Dismiss for Failure to State a Claim

#### 1. Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006). However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Where there are dispositive issues of law, a

court may dismiss a claim regardless of the alleged facts. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 2. Breach of Contract

Because the federal defense providing this Court jurisdiction has application only to the Plaintiff's breach of contract claim, that is where the Court begins its analysis. The Defendant argues that the Plaintiff has failed to state a claim for breach of contract because he does not identify any provisions or any specific agreement that was allegedly breached. The Defendant also argues that the claim must be dismissed because it is governed by Georgia's version of the Uniform Commercial Code, which displaces common law in those areas in which it speaks. (Doc. 7 at 3-4).

The Plaintiff's Second Amended Complaint states in relevant part that:

Under the terms of Plaintiff's agreement with McIntosh, McIntosh agreed to accept and pay only those checks bearing the signatures of authorized persons. McIntosh agreed to negotiate only those checks containing Plaintiff's signature.

…

Plaintiff was the only authorized signatory on Plaintiff's account at the time the forged instruments were presented for payment.

…

McIntosh breached its agreement with Plaintiff to accept and pay only those checks bearing the signatures of authorized persons and breached its agreement with Plaintiff to negotiate only those checks containing Plaintiff's signature.

…

As a result of McIntosh's negligence in accepting the forged instruments for payment and by breaching its agreement with Plaintiff to accept and pay only those checks bearing the signatures of authorized persons, Plaintiff has been damaged in the amount of $80,432.30.

(Doc. 13, ¶¶ 14-17). "Under Georgia contract law, '[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3)

damages arising therefrom.' " *Kabir v. Statebridge Co., LLC*, 2011 WL 4500050 at *7 (N.D. Ga.) (quoting *TDS Healthcare Sys. Corp. v. Humana Hosp. Illinois, Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995)).  Additionally, the Plaintiff cannot survive a motion to dismiss if he does not assert specific provisions of the contract that were breached. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F.Supp.2d 1356, 1369 (N.D. Ga. 2006) ("Because [plaintiff] cannot point to any contractual provision that [defendant] breached … [plaintiff] cannot state a claim for breach of contract based on these allegations").

The Defendant accurately points out that the Plaintiff has not identified any provisions or any specific agreement that was breached.  Despite the fact that he had three opportunities to do so, the Plaintiff has not attached to or included in any of his pleadings a copy of the alleged contract.  He has not excerpted any relevant portions of an agreement, nor has he pointed to any terms that were violated.  In short, he has not alleged the existence of a valid contract.  Without a valid contract, neither this Court nor the Defendant can properly resolve or respond to allegations that particular terms were materially breached.  A complaint is not sufficient "if it tenders [only] 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  In this case, the Plaintiff has made the naked assertion that a contract was violated and that he was damaged thereby, but he has not stated sufficient facts regarding the existence and nature of the contract itself.  He has shown no entitlement to relief on this claim because the facts he has pleaded "do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950.

For this reason alone, the Plaintiff has failed to state a claim upon which relief may be granted.

However, even if the Plaintiff pled sufficient factual allegations for a breach of contract claim, such a claim is not permissible because the Plaintiff's exclusive remedy is found in Georgia's version of the U.C.C. The U.C.C. will preempt Georgia common law if particular provisions of the code displace the common law. *See* O.C.G.A. § 11-1-103; *First Ga. Bank v. Webster*, 168 Ga. App. 307, 308, 308 S.E.2d 579, 581 (1983); *Crosson v. Lancaster*, 207 Ga. App. 404, 405, 427 S.E.2d 864 (1993). Indeed, "where the Code provides a comprehensive remedy for parties to a transaction, a common law action would be barred." *Webster*, 168 Ga. App. at 308, 308 S.E.2d at 581. *See also Dudley v. Wachovia Bank N.A.*, 290 Ga. App. 220, 223, 659 S.E.2d 658, 662 (2008) (holding that where Georgia's U.C.C. specified warranties that are implied by certain conduct, the parties protected by the warranties are limited to U.C.C. remedies); *Owenbey Enterprises, Inc. v. Wachovia Bank, N.A.*, 457 F.Supp.2d 1341, 1353-54 (N.D. Ga. 2006) (holding that common law conversion claim was preempted by the U.C.C., which "clearly addresse[d] conversion"). The concern is that reliance on the common law, despite available U.C.C. remedies, would "thwart the purposes of the code." *Webster*, 168 Ga. App. at 308, 308 S.E.2d at 581.

Here, on the specific facts before the Court, U.C.C. provisions provide a comprehensive remedy to the Plaintiff's allegations, thus barring an additional breach of contract claim.[3] Indeed, the Plaintiff is already pursuing this remedy in Count I of his

---

[3] Presumably, the U.C.C. bars the Plaintiff's Count III common law negligence claim as well. (Doc. 13 at 4). However, the Court does not address this issue or make any ruling on this claim

Second Amended Complaint, conversion, pursuant to O.C.G.A. §§ 11-3-419 and 11-3-420.  As § 11-3-420(a) states:  "An instrument…is converted if…a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment."  That is precisely the behavior the Plaintiff alleges resulted in a breach of contract:  Although McIntosh State Bank purportedly agreed to accept and pay only checks bearing authorized signatures, it in fact accepted and paid checks presented by an unauthorized party.  Thus, the U.C.C. addresses and provides the remedy for the Defendant's alleged wrongdoing, and to that extent displaces common law breach of contract in this case.

Although this Court does not specifically address the Plaintiff's negligence claim, other courts have, on facts similar to these, also found § 11-3-420 to displace a common law negligence claim.  *See, e.g.*, *Promissor, Inc. v. Branch Bank and Trust Co.*, 2008 WL 5549451 (N.D. Ga.).  In *Promissor*, a Promissor employee intercepted from Promissor's customers checks made payable to the company.  He then opened an account at BB&T under the name "Promissory," fraudulently endorsed the checks, and deposited them into the account.  BB&T accepted the checks as endorsed for deposit.  Promissor then sued BB&T on a common law negligence claim, among others.  *Id.* at *1.  However, the court found that § 11-3-420 "plainly applie[d]" to the *Promissor* scenario and thus provided a comprehensive remedy that preempted the negligence claim.  *Id.* at *3.  On this holding, the court granted BB&T's motion to dismiss Promissor's negligence claim.  *Id.* at *4.

---

because, as discussed below, it is unclear whether the Court possesses jurisdiction over this case once the breach of contract claim is dismissed.

Additionally, a number of courts across the country have interpreted their respective versions of § 11-3-420 and related code sections to preclude breach of contract claims, among others.  They counsel that "[t]he weight of case law comes down against permitting common-law actions to displace the UCC's provisions" governing the endorsement, negotiation, collection, and payment of checks.  *C-Wood Lumber Co., Inc., v. Wayne County Bank*, 233 S.W.3d 263, 281 (Tenn. Ct. App. 2007).  This is due to the "delicately balanced statutory scheme" these articles embody and the need for certainty and uniformity.  *Id.  See also Berhow v. The Peoples Bank*, 423 F. Supp. 2d 562, 567 (S.D. Miss. 2006); *Gil v. Bank of Am.*, 42 Cal. Rptr. 3d 310, 312-14 (Cal. Ct. App. 2006); *Stefano v. First Union Nat'l Bank*, 981 F. Supp. 417, 420-21 (E.D. Va. 1997); *Equitable Life Assurance Soc'y v. Okey*, 812 F.2d 906, 909 (4th Cir. 1987).  Here, regardless whether § 11-3-420 displaces all breach of contract claims generally, it "plainly applies" to this breach of contract claim specifically as the statute expressly articulates the legal duties of the Plaintiff and McIntosh State Bank.  For this reason, in addition to the Plaintiff's failure to plead sufficient facts regarding the existence and nature of the purported contract, the Plaintiff has failed to state a claim upon which relief can be granted because the U.C.C. provides his proper remedy.

Because the Plaintiff has failed to state a claim for breach of contract pursuant to Fed. R. Civ. P. 12(b)(6), this claim is **DISMISSED with prejudice**.  However, this dismissal renews the jurisdictional question.

### C. Federal Jurisdiction Revisited

As stated above, the sole basis for federal jurisdiction in this case rested on the Defendant's assertion of the *D'Oench, Duhme* doctrine in defense against the Plaintiff's

breach of contract claim. But that claim has now been dismissed. Without the breach of contract claim, the Plaintiff is no longer attempting to enforce against the Defendant an agreement, written or otherwise, with McIntosh State Bank. Rather, Georgia's U.C.C. governs the parties' rights and responsibilities. Given this fact, the Defendant's assertion of the *D'Oench, Duhme* defense must "fail[] because [the Plaintiff's] claim is not based on any agreement that is not part of the banks records." *Bufman Organization v. F.D.I.C.*, 82 F.3d 1020, 1027 (11th Cir. 1996). *See also Garrett v. Commonwealth Mortgage Corp. of America*, 938 F.2d 591, 595 (5th Cir. 1991) ("neither section 1823(e) nor the *D'Oench, Duhme* doctrine prevents plaintiffs from asserting claims or defenses that do not depend on agreements"). Thus, 12 U.S.C. § 1823(e) and 12 U.S.C. § 1821(d)(9)(A) no longer provide a colorable federal defense.

Because the Defendant's sole colorable federal defense raises no genuine dispute in the absence of the Plaintiff's breach of contract claim, the interpretation of federal law as contemplated by 12 U.S.C. § 1819(b)(2)(D)(iii) appears to no longer be necessary. If that is true, then the state law exception to federal jurisdiction over claims against the FDIC is satisfied, the Court's original jurisdiction ceases to exist, and only state law claims between nondiverse parties[4] remain to be adjudicated. Although removal may have been proper at the time, it would not be proper now, and the Court need continue to exercise jurisdiction over the case only if it chooses to. *See, e.g., Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992) (recognizing district court's

---

[4] Diversity jurisdiction is not possible here because the FDIC is a federally chartered corporation that is not a citizen of any state. *See RES-GA Four LLC v. Avalon Builders of GA LLC,* 2012 WL 13544 at *3 (M.D. Ga.). Likewise, the original Defendant, McIntosh State Bank, was also a nondiverse party.

discretion to remand remaining state law claims after dismissing federal claim removed pursuant to 28 U.S.C. § 1442(a), a jurisdictional statute also requiring the raising of a federal defense). Analogy might also be drawn to the Court's discretionary authority to exercise supplemental jurisdiction pursuant 28 U.S.C. § 1367. When a federal district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over any remaining claims. § 1367(c)(3).

Here, the Court derives its original jurisdiction from 12 U.S.C. §§ 1819(b)(2)(A) and 1819(b)(2)(D), which when read together grant federal question jurisdiction over any civil case where the FDIC is a party *unless* only the interpretation of state law is necessary. By dismissing the Plaintiff's breach of contract claim, thereby rendering its associated defense meaningless and activating the state law exception, it seems the Court has effectively dismissed its basis for original jurisdiction. *See also Lazuka*, 931 F.2d at 1535 (entitling a plaintiff to remand where it is shown that § 1819(b)(2)(D) is satisfied). Moreover, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(a)(c). *See also Lazuka*, 931 F.2d at 1536 (concluding that 12 U.S.C. § 1819 provides certain specific exceptions to § 1447, but that the FDIC is otherwise subject to that statute's general removal and remand procedures); *but see Jamison v. Wiley*, 14 F.3d 222, 238-39 (4th Cir. 1994) (concluding that when case was properly removed pursuant to 28 U.S.C. 1442(a)(1) and the district court later rejected the federal defense providing the basis for removal, that subject matter jurisdiction was not lost and remand was improper).

Given that the Court may no longer have jurisdiction over this action, it does not at this time rule on the remainder of the Defendant's motion to dismiss. Accordingly, the parties are **ORDERED** to file briefs addressing whether the Court may retain jurisdiction over this case now that the breach of contract claim is dismissed and no colorable federal defenses remain. These briefs must be filed within 30 days of the entry of this Order.

### III.  CONCLUSION

The Defendant's Motion to Dismiss (Doc. 7) is **GRANTED in part** as to the Plaintiff's Breach of Contract claim. Ruling on the remainder of the Motion is **POSTPONED**. The parties are further **ORDERED** to file briefs within 30 days addressing whether the Court may retain jurisdiction over this case now that the breach of contract claim is dismissed and no colorable federal defenses remain.

**SO ORDERED**, this 10th day of December, 2012.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT